Thank you. Good morning, Your Honors. May it please the Court, my name is Ali Fletcher and I'm here with my colleague Chris Keegan. We represent Plaintiff Appellant Mr. James Cramer. Before I begin, I would like to reserve three minutes of my time for rebuttal and I will keep an eye on the clock as well. Your Honors, Mr. Cramer was wronged. No one disputes that defendants erroneously classified Mr. Cramer as an NS dropout. No one disputes that confidential central file. And no one disputes that Mr. Cramer spent nearly 20 years in segregated housing. This continuous confinement was based on subsequent gang validations, validations that Mr. Cramer challenged without the benefit of knowing that the prison previously classified him as an NS dropout. This is material evidence toward the veracity of the prison's ability to accurately classify prisoners as gang members or gang dropouts. Defendants violated Mr. Cramer's due process rights. But to date, no administrative body or court of law has heard the merits of Mr. Cramer's claim. Judge Sotomayor What exactly is the due process violation? Ali Fletcher Your Honor, I believe the due process violation is that he was unaware of this NS dropout notation that was placed in his central file and that knowledge would have allowed him to challenge the subsequent gang validations because, you know, there are questions, are they the same people who'd made both classifications? And I think if he had had this knowledge, he could more effectively challenge his subsequent validations which kept him housed in segregated housing. Judge Sotomayor Well, there are a lot of things I'm unaware of, but that doesn't mean my due process rights have been violated. Due process is a term we use to apply to lots of situations, but I'm not sure I understand what was violated here. What process was he due that he didn't get? Ali Fletcher Sure, absolutely, Your Honor. I think, you know, starting back in 1974, the Supreme Court said that prisoners should have an opportunity to marshal a defense. This Court in 1974... Judge Sotomayor But he did. He just told us this was put in his non-confidential file. He presumably could have discovered it himself. I'm not sure how that's a due process violation. Ali Fletcher I think that's correct, Your Honor. He could have presumably discovered it himself, but it shouldn't have been placed in that file, and so he had no reason to look at his central file. Judge Sotomayor That turns any error into a violation of due process, and again, we use due process as a catch-all, but I'm not sure I understand how an error automatically becomes a due process violation, and I'll extend that to ask, so from this violation, what does he seek? I take it he's no longer in administrative segregation. Ali Fletcher That's correct, Your Honor. He's no longer in administrative segregation. He is seeking damages, and I think the question then becomes on remand, was this a harmless error? We don't believe that it was, but we think that he's in evidence to show that, you know, had he known about the erroneous gang validation, he could have challenged the veracity of the prison's later validations that kept him housed in segregated housing. Judge Sotomayor So any mistake made by government is a due process violation? Ali Fletcher No, Your Honor. I don't think that ---- Judge Sotomayor What's the due process violation here? From the beginning, I've been puzzled by the case trying to figure out, okay, what's that link? Ali Fletcher Yes. So I think the due process violation is that he was not given this potentially ---- I think this is, again, material evidence that says the prison doesn't know whether you're a gang member or a gang dropout. Would it have saved the day for him? That part is unclear, Your Honor. I think that that needs to be developed. But I do think that not having that evidence is material for Mr. Kramer. He would have liked the opportunity to challenge those subsequent gang validations, which he did, in fact, challenge, but with the knowledge that the prison had previously aired in classifying him. Judge Sotomayor I'm not sure if the relationship between the two, I don't quite understand it. As I understand the record, the defendants who are currently in this case at this point only had to do with the initial 1994 gang dropout notation, right? They played no continuing role after that? Ali Fletcher Yes, that's correct, Your Honor. The defendants involved in this are from the 1994 notation because that was the notation that was erroneous and that he would have liked to have used to challenge his subsequent gang validations. Judge Sotomayor So when he says that he's challenging his ongoing retention in segregated housing based on the gang validation, that had nothing to do with the defendants currently before the court, right? Ali Fletcher I think it does have something to do with the defendants before the court because — Judge Sotomayor Explain that link to me. Ali Fletcher Sure, Your Honor. I think the evidence of that erroneous notation that was withheld from him absolutely has to do with the defendants who made the erroneous notation. And so that would be the link between the erroneous notation, the defendants in this case, and then his ongoing placement in segregated housing. So it's the erroneous notation that he was unaware of that he is challenging here, that he would have liked to have had earlier to be able to challenge his subsequent gang validations. Does that answer Your Honor's question? Judge Sotomayor If I could jump in. Are you saying that the subsequent gang determination was somehow influenced by the NS dropout incorrect notation? Ali Fletcher I don't know that the record is fully developed on that, Your Honor, but that is something that we would like to explore on remand if, you know, this case is to proceed forward. I think certainly the argument is that it could have been influenced as subsequent validations. And regardless of whether it was or was not, I think, you know, the fact that making an NS dropout notation in someone's file is not really a small deal. They would have had to have snitched on pretty much every other member in that gang. So how the prison and defendants made that error, but the rest of them were, you know, you should be able to use that error to challenge the subsequent validations and say why isn't that purely speculative on your part? The 1997 court, which he challenged his gang validation, said that they were the information relied upon to find that he was a gang member and, therefore, in the segregated housing was based on three informants who corroborated each other. And there's sufficient initiative reliability to be believed. I don't see anything in the record that suggests the erroneous gang dropout notation in 1994 would have any bearing on the gang validation process in 1997. So do you have anything other than speculation that demonstrates that potential linkage? Your Honor, I don't think it's speculation that the NS dropout notation was erroneous, and I think that that in and of itself, how was that made? Why was that made incorrectly? And why in the 1997 case were they more or were they better equipped to label him as a gang member? I think it's the mistake in and of itself that casts doubt on the prison's ability to accurately classify these individuals. Didn't he challenge the 1997 classification? Yes, Your Honor, he did. And lost. Yes, Your Honor, he did. He challenged that without the benefit of knowing about the erroneous notation. And, Your Honor, you can revisit it because under 15 CCR 3084.6, as long as he is retained in segregated housing, he's entitled to raise that challenge at any time. So when he became aware of the erroneous notation, he was entitled to revisit that then and challenge his subsequent validations with that. Well, he can challenge it certainly for the purposes of the administrative segregation, but he's not in administrative segregation any longer. And it's not a perfect analogy by any means, but if you're hurt in a car crash and the statute of limitations is run, then it's run. And in this case, the fact that for a period of time he suffered consequences but no longer is suffering those consequences, why is it he's able to go back to 1994? Well, Your Honor, he's seeking damages. This isn't a case for injunctive relief or to ask for him to be removed from segregated housing. It's for damages. And the statute doesn't say that you can only challenge retention in segregated housing for the purpose of So counsel, when I'm sure, when opposing counsel stands up, they're going to say, okay, hold on a second. Your client learned of the violation in September of 2014 and did not challenge it until April of 2015, which under the rules is late. Now, I'm assuming you're going to say, well, but he was in the shoe, so it doesn't matter. He could challenge that at any time. Is that your response to that? That's correct, Your Honor. Do you have any authority that other than the, have there been any courts that have even if the rules say you have to challenge within 30 days, if you're in the shoe, you can, is it the SAP case that you point to? Which one? Mitchell v. Cate, I believe, is the case that, and unfortunately, it's a district court case, so it's obviously not binding on this court. It's something. Yeah. There, the plaintiff claimed that his due process rights were violated when he was placed in segregated housing. And the defendants moved to dismiss the complaint on the grounds that plaintiff failed to exhaust his administrative remedies. The defendants argued that plaintiff's attempt to exhaust was untimely, but the court concluded that plaintiff alleged violations of his rights in relation to his retention in segregated housing. And because of this ongoing issue, he was entitled to raise his grievance at any time. And it's a Westlaw site for that, if you would like me. I've got it here. Okay. So, counsel, you, I think you're asking us to remand this case to the district court, correct? That's correct, Your Honor. All right. So we always appreciate when pro bono counsel is here, but when you're asking for a remand, would you still be there? Would you still be on this case in the district court, or is this just a Ninth Circuit and you guys are off the case? Your Honor, I would have to check. I would like to represent Mr. Kramer. I don't know that I have the authority to go into that. I'm going to get in the back if that helps. Okay. Yes, Your Honor. Okay. All right. No, because when people are asking for remands and then they abandon their client, it's kind of like, well, what are you really asking us to do? Okay. I just wanted to make sure. And we understand that the pro bono program is tied to appeal, but this particular client is one on remand. He would be exactly in the same problem that we have now. Sure, absolutely. This is the first time he's been represented by counsel. And as you all are aware, there are some waiver issues and things of that nature that Mr. Kramer is facing now. And so I would be happy to continue to represent him. It's a hard time litigating it by himself if we were to remand the case. Yes, Your Honor. Your Honor, if you have no further questions, I will quickly touch on waiver, because I think it's an important issue in this case. And I think the – well, I know that this Court's choice to enforce waiver is a discretionary one, and the Court will exercise its discretion to hear waived claims in two circumstances. First, when – to prevent a miscarriage of justice. And second, when the issue is purely one of law and either doesn't depend on the factual record below or the factual record has been fully developed. I think both are true here, but most critically, the record has been fully developed on the question presented, which is the legal question, was Mr. Kramer's administrative appeal erroneously screened out as untimely because his placement in segregated housing was ongoing. For that, Your Honors, we'll need to look at Mr. Kramer's administrative appeal, which is in the record beginning at ER 71, and his placement at the time he lodged that appeal. Without any factual development on this issue, the answer is yes. He filed his administrative grievance while he was contained in segregated housing. In terms of a miscarriage of justice, Your Honors, I think that we have identified an error by the district court that granted was not presented to them, but it is a clear error under the statute to find that this was untimely because he was retained in segregated housing. And so to ignore that error here would be a miscarriage of justice where Mr. Kramer is finally represented by counsel. Counsel, I hate to interrupt, but I know you wanted to save some time. Yes. Thank you so much, Your Honor. I will reserve the rest of my time for rebuttal. May it please the Court, Deputy Attorney General Martha A. Lindbach, appearing for defendants at police. This Court should affirm the judgment for four reasons. First, there is no triable dispute that Mr. Kramer failed to exhaust available administrative remedies for his claim concerning an error in a 1994 prison record. Second, his lawsuit is time-barred.  Mr. Kramer did not file a miscarriage of justice that the defendants have recognized or asked about. The mistaken note in his file does not implicate any due process liberty interest. And finally, defendants are entitled to qualified immunity. I'd like to talk briefly about exhaustion. Taking Mr. Kramer's own testimony is true. He did not timely grieve this notation. There were five months between his alleged learning of it. And just to be clear, you're talking about the 1994 faults? Yes, Your Honor. The 1994 note in his chrono that I believe everybody agrees was a mistake. He learned of that issue in September 2014, did not grieve for over six months after that. While Section 3084.6 allows an appeals coordinator to consider whether an issue is ongoing, it does not dictate a particular outcome, and it does not indicate that any time a prisoner is housed in segregated housing, the issue is automatically ongoing. The prisoner must present facts to allow the appeals coordinator to make that determination. And here, there was no particular statement in his appeal connecting this 1994 record to his ongoing housing. And even if there had been a mistake. It's no longer an administrative segregation, right? That is my understanding, yes. And what's changed is the discovery that the 1994 notation was false. No, Your Honor. There may have been other things that are changed, and I accept that, but we don't have any factual development of that. So how are we supposed to decide that the fact that he's in the special housing unit is irrelevant? There's no evidence showing that this 1994 record caused his placement in segregated housing, nor is there any evidence showing that that was the reason he was no longer retained in the security housing unit or SHU. Well, certainly the district court didn't get to that in granting summary judgment. Was that part of the motion for summary judgment that you presented? There was evidence raised with the reply in response to some of Mr. Kramer's arguments showing exactly what was the reason for his placement in segregation in 1996, which was he was placed there because he had assaulted another inmate and referred for remaining placement because he was a validated gang member. But the district court didn't seek to grant summary judgment, didn't talk about that at all, indeed made a point of saying I'm not talking about anything else. That's correct, Your Honor. But the evidence is clear. There's no ---- Mr. Kramer had a chance to ---- He had a chance. You say that was offered up in the reply. I take it there was probably not a surreply. So has Mr. Kramer had a chance to respond to that particular argument on behalf of the State? This evidence was made in response to Mr. Kramer's arguments. He didn't present any evidence in his ---- It was the State's motion for summary judgment. Yes. And you just told me in the reply evidence was outlined. Did Mr. Kramer have a filing after that to the district court? No. No, Your Honor. So then it sounds to me like Mr. Kramer hasn't had an opportunity to speak to that evidence, and that wouldn't really be an appropriate ground for us to rule on. It would, Your Honor. Certainly Mr. Kramer had plenty of ---- the bulk of the evidence relied on was in our motion for summary judgment. We did make the argument in our motion that this did not implicate a liberty interest, that this was not the reason for his placement in segregation, and we made the argument there. Also, we presented facts regarding his other filing that he had submitted, his other lawsuit, where he said that his placement in segregated housing was due to his validation, not due to this record. So there was nothing to connect the two, and he presented no evidence to suggest that there was, which would have been his burden on summary judgment. So ---- Well, but you just told me he didn't have a filing after the time the State made that argument in its reply. There is ---- that argument was not ---- I apologize if I made an error, Your Honor. That argument was not made for the first time in reply. It was fleshed out more. In the supplemental excerpts at, I believe, pages 6 through 21, there was additional evidence presented regarding Mr. Kramer's validation. Those are some of the notes from his 1996 and 2004 validations explaining the reasons for his placement in SHU, which he would have already had because he had a chance to contest that validation. Some of those forms are confidential information disclosure forms explaining that the information relied on at that time was not this 1994 record. It was statements from other inmates made during the debriefing process when they were asked about their gang involvement. Certainly, if Mr. Kramer had wanted to challenge that, those particular records, or done something more, he could have asked for a chance to submit a reply. He didn't do that. He did ask for more time to ---- oh, I apologize, Your Honor. In any event, I'd also like to touch on a ---- So is there any indication that if he hadn't received the 1994 gang dropout notation that he would be in general population? No, Your Honor. The evidence shows that he was placed in security housing unit for entirely separate reasons. There's no evidence, and he presented none, connecting this notation with any particular negative consequence. It simply had no effect. And as Your Honor's pointed out, Mr. Kramer does not have a freestanding right to an error-free prison file under the due process clause. He would have to connect that with potentially a housing placement, potentially a lengthening of his sentence. There would have had to be something resulting in an atypical and significant hardship, and he just did not show that here. He also didn't file a suit within the statute of limitations. I want to point out that he could have discovered this note with reasonable diligence in 1997, 1998, and again in 2007 when he received the document in response to a subpoena. So for that reason, his lawsuit is untimely. At the latest, he would have had to have filed suit in 2011. So Your Honors can also affirm on that ground as well. And touching on the qualified immunity issue as well, the defendants at the time they acted would have had — there would have been no law placing them on notice that this error in his file, which did not have a result or did not result in his placement in administrative segregation, implicated a liberty interest. I appreciate these alternative grounds, but I'd like to ask you to focus on what Judge Owen seemed to tee up as the question anticipating your response, which is — or teed up to your colleague. Did he wait too long to challenge — and I'm afraid I've got the appeal numbers messed up, so let me look. 15-1055, I think that's the right one, that was screened out. And the arguments I think you have made that he waited too long to further challenge that. And the response on behalf of Mr. Kramer is that he was still in the special housing unit, and so he could still continue to bring his complaint later. What is your response to that? Yes, Your Honor. My response is that certainly under the regulations, the appeals coordinator may consider whether a particular issue is ongoing when they are looking at whether or not an appeal is timely. But it would have to be the issue that is ongoing. And here, Mr. Kramer's housing was not related to this 1994 note. So the issue — I hear that, and I know you've made the argument, but we're — I don't know that we're particularly well-equipped to make that determination because it's not something the district court discussed. The district court didn't have reason to discuss it because it wasn't focused on the issue that has now been brought before us by pro bono counsel for Mr. Kramer. And so that starts to say to me, gee, if we have to get into this causation of what caused the housing problem, that's not the kind of thing the Court of Appeals is well-equipped to handle. Maybe we ask the district court to do that. Is there something else you can tell us that would obviate that possible step? Your Honor, even if Your Honors were to conclude that that issue is unclear, Mr. Kramer's grievance was still untimely in that he did not challenge this cancellation decision timely. He had to take another step. That's what I'm trying to get at. That's what I'm trying to get at. Yes. You've heard the response being, well, he's still in the administrative segregation. Why isn't that a good enough response? That doesn't matter, Your Honor, because he had, you know, even assuming that they made an error in that initial cancellation decision, which is in the record at 71, and they actually indicated that he could submit a separate appeal challenging his housing. But even assuming that is an error, they informed Mr. Kramer he could submit another grievance, saying why that cancellation was somehow incorrect. And that's a necessary part of the grievance process for him to achieve proper exhaustion. We know, though, that he did not follow that process because he submitted an appeal challenging that cancellation decision too late. And so that cancellation was also canceled itself as untimely. So for that reason as well, it really doesn't matter. So the second untimely it has had to do is focused with the period of time between and I should have written down the dates, between the notification that his 15-1055 had been screened out, had been denied, and the period of time before he brought the appeal of that as distinguished from filing another grievance. That's correct. Once he received that cancellation decision, he had 30 days to then challenge that decision. The date of the cancellation is May 1st. He didn't grieve that decision until over a month later, June 4th. So that appeals coordinator canceled that decision as untimely. So remedies were available to Mr. Kramer at that time. If he'd wanted to present this evidence, and he would have had to present this to the appeals coordinator, if he wanted to say this was an ongoing issue, he could have done that in a timely grievance challenging that cancellation decision in order for the appeals coordinator under 3084.6 to consider whether it was an ongoing issue, whether that cancellation was proper. But he didn't do that. So the appeals coordinator wouldn't have had a chance to really evaluate that issue. And that would And counsel, as to this issue, I'm just trying to think back to what the district court, the discussion you've just had, and I'm not saying I'm not agreeing or disagreeing. I just want to put it in the context. The district court did not have to deal with the argument you just made, correct? That is correct, Your Honor. Well, actually, no. The district court did evaluate this later cancellation. That is something that we argued. We argued he would have had Oh, I'm sorry. But I mean in the context of the argument that they're now making. Not precisely in this context. But we did raise the issue that he needed to timely challenge this cancellation decision. And he didn't do that. And that was part of what the district court relied on in ruling that his appeal was untimely. I'm happy to answer any other additional questions about some of the other grounds to affirm the judgment. It is clear from the record, despite the fact that the district court did not rule on this in the first instance, that Mr. Kramer's housing placement was based on his gang validation and on separate issues, not on this 1994 record. The fact that it was two years later than this record was written, the fact that the record itself also indicates that Mr. Kramer did not have gang affiliation at that time, shows that it was an error, but it had no consequence for him. So there would have been no, it did not implicate his due process right. And defendants are entitled to qualified immunity because, again, they wouldn't have been on notice that any sort of mistaken notation in a prison file, regardless of its lack of actual effect, practical effect, would have implicated an inmate's due process rights. Thank you, Your Honors. All right. Thank you. Your Honors, I want to touch on one thing, and if I have time, I'll get to a second. But opposing counsel said that his first grievance was untimely, and then he didn't timely grieve that cancellation. So there's two instances in which opposing counsel said Mr. Kramer was untimely. Again, the regulation, 15 CCR 3084.6c, allows him to appeal at any time that he remains in segregated housing, so long as the issues are connected, which they are here. In his grievance, he challenges both his placement in segregated housing and the erroneous dropout notation that was withheld from him. Therefore, because they were canceled as untimely, the law on the circuit is clear. Under SAP v. Kimbrell, if prison officials improperly screen a prisoner's administrative appeal, they do not have to satisfy the PLRA's exhaustion requirements. So at that point, he had no burden to exhaust these remedies. Briefly touching on the statute of limitations, Your Honor, the district court did actually consider this issue in an earlier motion to dismiss. It is at the record at 234. The district court concluded that the due process claim accrued in September 2014 and that Mr. Kramer filed his claim in March 2018, which is within the 4-year statute of limitations. I think the district court got it right. BIBO would actually be instructive, and this Court held that there was a question of fact in that case, whether a reasonable person would have been put on notice of his claims. The same is true here, Your Honors. Just because Mr. Kramer remained in segregated housing for 20, almost 20 years, does not put him on notice of the erroneous NS dropout notation. He had no reason to know of that. So let me ask you. I thought there's no dispute that he waited more than 30 days before submitting the grievance, that's 15-01055, as to the gang notation, right? And at the time that they basically canceled it for timeliness, they told him that the issue of housing, if I recall the record correctly, is a separate issue. Is my recollection of the record correct? And did he grieve the housing issue separately in between this grievance and the second grievance? Yes, Your Honor. I do believe your recollection is correct. I think the point, though, is that these were interconnected, which is why they needed to be grieved together in order for him to effectively challenge the previous erroneous notation. It was directly linked to his ongoing placement in segregated housing. All right. Our questions took you over time. Any additional questions, Judge Clifton? Thank you very much, Your Honor. Thank you very much, counsel, for both sides. A well-argued case and very helpful arguments. And thank you to you and to your colleague and Kirkland Ellis for participating in the pro bono program. This matter is submitted for decision by the court, and we are adjourned for the day. All rise.
judges: CLIFTON, NGUYEN, OWENS